Doyle, Adm. v. Hoyle Ins.                    CV-94-244-SD  01/15/97

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE

<u>David Doyle, Administrator of the</u>
<u> Estate of Diana F. Doyle</u>

<u>        v.</u>                              Civil No. 94-244-SD

<u>Wayne F. Hoyle;</u>
<u>Hoyle Insurance Agency;</u>
<u>Insurance Company of North America</u>


O R D E R

In this diversity action, plaintiff[1] seeks to recover in tort and in contract for damage sustained as a result of defendants' failure to provide fire loss and liability insurance for plaintiff's New Hampshire property.

Presently before the court is a motion for summary judgment filed by defendant Insurance Company of North America (INA), to which plaintiff objects.  The amended complaint contains the following claims against INA: (1) breach of contract (Count III); (2) breach of express warranty (Count IV); and (3) breach of contract (Count VII).  INA's general contention is that it was not plaintiff's insurer at the time when a fire destroyed plaintiff's property.

_____

[1]All references to "plaintiff" herein refer to Diana F. Doyle, who is deceased.

<u>Background</u>

This case involves untangling a web of verbal and written communications and agreements made in conjunction with the efforts of plaintiff's agent Donald S. McStay and Wayne F. Hoyle, Sr., to obtain fire loss and liability insurance for plaintiff's New Hampshire properties.  One of these properties was destroyed by fire on February 10, 1994, at which time defendant INA claims it was not plaintiff's insurer.

The tale begins in November of 1992, when McStay began negotiations with the FDIC to purchase two buildings located at 60-64 Union Street in Littleton, New Hampshire (the Union Street property or the property).  After negotiating the purchase price and approaching David and Diana Doyle to invest in the property, Defendants' Appendix at 91, McStay approached Hoyle, owner of Hoyle Insurance, Inc., to obtain insurance for the property, <u>id.</u> at 100.

On December 29, 1992,[2] Hoyle issued a binder of temporary insurance for the Union Street property (the December 1992 binder) through Hoyle Insurance, Plaintiff's Exhibit 3, providing "blanket building & contents" coverage in the amount of $225,000.

---

[2]Also on this date, the Union Street property was transferred from the FDIC to Diana Doyle, who paid the $75,000 purchase price in cash.

2

The effective date of the binder was listed as December 29, 1992, and the expiration date was December 29, 1993. However, no company was expressly listed on the binder as being the insurer.[3]

On January 9, 1993, Hoyle submitted an application to the CIGNA company in Philadelphia (the parent company of defendant INA), for a "package policy" for "Diana Doyle c/o Donald McStay." Defendants' Appendix at 5. Hoyle testified that the Philadelphia office told him that because of the amount of risk involved, he should instead submit the application to INA's North Carolina office.

Subsequently, on February 9, 1993, Hoyle issued another binder to plaintiff that specifically named INA as insurer. Plaintiff's Exhibit 5. The binder also listed the same code number that had previously been on the December 1992 binder. Several days later, Hoyle prepared a "small commercial account" application for the Union Street property and another property that had been recently purchased by Doyle. The application did not list an insurer.

---

[3]McStay assumed he was covered by a CIGNA company (the parent company of defendant INA) because in his previous dealings with Hoyle his policies were typically issued from a CIGNA company. In addition, McStay believed Hoyle answered his questions about the binder as agent of INA. Plaintiff's Exhibit 2, ¶ 7. In his deposition, Hoyle affirmed that he intended to bind a CIGNA company, but had not yet ascertained which CIGNA company would be the one.

By letter dated April 26, 1993, Hoyle informed McStay that the "CIGNA underwriters have rejected providing coverages for the Diana Doyle properties." Defendants' Appendix at 15. However, McStay claims he never received the letter and was not otherwise informed of the rejection of coverage. It is also a matter of dispute whether Hoyle informed McStay by telephone of the rejection.

In an attempt to find other coverage for McStay, Hoyle sent letters to several other insurance carriers. For various reasons, these carriers refused to bind coverage. Some time thereafter, Hoyle received a written quote for property and liability coverage for the Doyle properties from Agency Intermediaries. The insurer listed on the quote was General Star Indemnity Insurance Co., located in Stamford, Connecticut. McStay testified in a deposition that Hoyle told him he could get a better premium price for the Doyle properties from another source.[4] Defendants' Appendix at 85-86.

On June 30, 1993, Hoyle issued another binder to plaintiff for a property that was to become part of the New Hampshire investment properties project, specifically naming INA as the

_____

[4]Later, on October 8, 1993, Doyle conveyed the Union Street property to DDN Realty Trust, an express trust of which Doyle was the sole trustee and beneficiary.

4

insurer.  The binder contained the same code number as the earlier two binders.

On November 24, 1993, Hoyle sent a letter to McStay discussing the premium quote from General Star and enclosing an affidavit for McStay to sign.  The affidavit indicated that CIGNA had previously refused to provide coverage for the Doyle properties.  McStay, however, denies receiving the letter.

Thereafter, on February 9, 1994, the building situated at 64 Union Street was destroyed by fire.  Early the next morning, McStay called Hoyle at his office and left notice of the loss. Later, Doyle notified Hoyle of the fire by means of a letter dated February 12, 1994.

Once notified of the fire loss, Hoyle Insurance advised the Woodsville Guaranty Bank, the mortgagee, that a premium notice for an insurance policy on the Union Street property was mailed on November 24, 1993, to plaintiff via McStay at 858 Washington Street, Franklin, Massachusetts.[5]  McStay Deposition at 48-52. Hoyle Insurance also informed the bank that because of nonpayment of the premium the unnamed insurance company canceled the policy on January 28, 1994, and therefore the Union Street property was

_____

[5]McStay asserts that his address is 885 Washington Street, not 858.

5

not covered.  McStay and Doyle deny receiving the alleged premium notice.  Plaintiff's Exhibit 6 at ¶¶ 10-12.


## Discussion

### 1.  Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Rule 56(c), Fed. R. Civ. P.; Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 327 (1st Cir. 1996).  Since the purpose of summary judgment is issue finding, not issue determination, the court's function at this stage "'is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  Stone & Michaud Ins., Inc. v. Bank Five for Savings, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

When the non-moving party bears the burden of persuasion at trial, to avoid summary judgment he must make a "showing sufficient to establish the existence of [the] element[s] essential to [his] case."  Celotex Corp. v. Catrett,, 477 U.S. 317, 322-23 (1986).  It is not sufficient to "'rest upon mere allegation[s] or denials of his pleading.'"  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson, supra, 477 U.S.

6

at 256), cert. denied, ___ U.S. ___, 114 S. Ct. 1398 (1994).
Rather, to establish a trial-worthy issue, there must be enough
competent evidence "to enable a finding favorable to the non-
moving party." Id. at 842 (citations omitted).

In determining whether summary judgment is appropriate, the
court construes the evidence and draws all justifiable inferences
in the non-moving party's favor. Anderson, supra, 477 U.S. at
255.


2. Choice of Law

Although the parties do not argue choice of law, it is
necessary to first determine which state supplies the governing
law before turning to the issues at hand. In a previous order,
the court ruled that Massachusetts law provides the governing law
for plaintiff's claim under the Consumer Protection Act. How-
ever, in so doing, the court construed plaintiff's claim as a
tort claim. The claims relevant to the instant summary judgment
motion are against INA and concern primarily INA's alleged breach
of an insurance contract covering property located in New Hamp-
shire. Accordingly, New Hampshire, being the primary location of
the insured risk, supplies the governing law over the breach of
contract claims. See Green Mountain Ins. Co. v. George, 138 N.H.
10, 13 (1993).

7

## 3. Standing

Defendant INA argues that it is entitled to summary judgment because plaintiff, both individually and as trustee of DDN Realty Trust, lacks standing to assert rights under the December 1992 binder.  In November 1993, Diana Doyle transferred the Union Street property to herself as trustee of the DDN Realty Trust, the sole beneficiary being the DDN Corporation.

New Hampshire Revised Statutes Annotated (RSA) 407:6,[6] which relates to the issuance of "temporary insurance," provides that insurance binders "shall be deemed to include all the terms of [the] Standard Fire Policy [contained at RSA 407:22]."  The Standard Fire Policy for New Hampshire contains a provision stating, "Assignment of [the] policy shall not be valid except with the written consent of [the insurer]."  RSA 407:22.  In general, "the provisions of an insurance policy which stipulate what formalities must attend an assignment are for the benefit of the insurer, not for the benefit of others."  Colasanto v. Life Ins. Co. of North America, 100 F.3d 203, 208 (1st Cir. 1996) (interpreting Massachusetts law).

Defendant INA relies on Margolis v. St. Paul Fire & Marine Ins. Co., 100 N.H. 303 (1956).  In Margolis, the named insured

_____

[6]RSA 407 expressly relates to contracts of fire insurance involving property in New Hampshire.  See RSA 407:2.

8

assigned all of its assets, including its insurance policies, for the benefit of creditors. The court, interpreting an earlier statute, found that the lack of an insurer's assent rendered the policy "void and inoperative," but the assignee was entitled to have the policies transferred to him, provided the insurers assented. Failing that, the assignee was entitled to receive payment of the unearned premiums upon surrender of the policies for cancellation. Notably, the court found that the policies were rendered void and inoperative, even when the insurer became aware of the assignment. Id. at 308.

Defendant INA states, and plaintiff does not contest, that plaintiff failed to obtain the written consent of INA, CIGNA, or any agent thereof when she transferred the Union Street properties to the trust. This failure to obtain written consent renders any assignment of rights under the insurance policy invalid. Accordingly, the court concludes that Doyle, in her capacity as trustee, does not have standing to assert rights pursuant to the policy.

Doyle in an individual capacity fares no better. It must first be noted that when Diana Doyle transferred the property to the trust, she herself lost an insurable interest. It is well accepted law that an insured "must have an insurable interest in a property before he may recover damages under an insurance

9

policy for destruction of that property." <u>New Ponce Shopping Center v. Integrand Assurance Co.</u>, 86 F.3d 265, 268 (1st Cir. 1996) (predicting law of Puerto Rico). Therefore, Diana Doyle in an individual capacity clearly cannot sue under the policy for destruction of the Union Street properties.

<u>Conclusion</u>

For the above reasons, the court grants INA's motion for summary judgment (document 68) .

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

January 15, 1997

cc:     Anthony L. Introcaso, Esq.
        Edward P. O'Leary, Esq.
        William D. Pandolph, Esq.
        Edward M. Van Dorn, Jr., Esq.

10